# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**TERRY O. EHIOROBO,**
      **Appellant,**

      v.                                        Case No. 15-C-0169

**TALMER BANK AND TRUST and**
**VFC PARTNERS 27, LLC,**
      **Appellees.**

---

## DECISION AND ORDER

Terry Ehiorobo appeals the bankruptcy court's order denying confirmation of his Chapter 13 plan.

## I. BACKGROUND

The portion of the debtor's Chapter 13 plan that is relevant to this appeal involves mortgages on the debtor's home and two rental properties. One of the appellees, Talmer Bank and Trust, holds a mortgage on the debtor's home. The mortgage is security for several promissory notes held by Talmer, which together have an outstanding balance of more than $450,000. The other appellee, VFC Partners 27, LLC, holds mortgages on two rental properties, which I will refer to as the College Avenue property and the Spruce Street property. The mortgage on the College Avenue property secures a note with an outstanding balance of $186,854.84, and the mortgage on the Spruce Street property secures a note with an outstanding balance of $193,327.38. The properties are currently worth much less than the amounts owed on the notes—the College Avenue property is worth $90,967, and the Spruce Street property is worth $68,375.

The debtor's plan proposes to make balloon payments on the claims of Talmer and VFC. The payment to Talmer will be made in or before the 59th month of the plan, and the payment to VFC will be made in or before the 35th month of the plan. The debtor anticipates that he will be able to make these payments by either selling or refinancing the properties before the payments are due. The plan also requires that, in addition to the balloon payments, the debtor make monthly deposits into escrow accounts for the benefit of Talmer Bank and VFC. The debtor cannot make withdrawals from the escrow accounts until the balloon payments are made, but he may use all or part of the account balances to make the balloon payments. The secured creditors may not withdraw any amount from the escrow accounts unless the debtor defaults on the plan or certain other requirements are met.

Both Talmer and VFC objected to the plan on several grounds. The bankruptcy court addressed only one of those grounds: whether the plan violated 11 U.S.C. § 1325(a)(5)(B)(iii)(I), which provides that if property to be distributed in connection with a secured claim is "in the form of periodic payments," such payments must be in equal monthly amounts. The court determined that distributing property in connection with the secured claims through both monthly escrow deposits and balloon payments was "in the form of periodic payments." Because those payments were not in equal monthly amounts, the court determined that the plan could not be confirmed over the creditors' objections. The debtor appeals, arguing that the monthly escrow deposits are not "payments" within the meaning of § 1325(a)(5)(B)(iii)(I), and that therefore his plan proposed only a single payment to each creditor—the balloon payment. Thus, argues the debtor, his plan does

2

not involve periodic payments to secured creditors and is not subject to the equal-monthly-amounts requirement.

## II.  DISCUSSION

**A.    Appellate Jurisdiction**

At the outset, I must address a question concerning my appellate jurisdiction.  When the debtor filed this appeal, there were two potential statutory bases for such jurisdiction.  The first was 28 U.S.C. § 158(a)(1), which provides that district courts shall have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court.  The second was 28 U.S.C. § 158(a)(3), which provides that a district court may grant leave to hear appeals from interlocutory orders of the bankruptcy court.  However, during the pendency of this appeal, the Supreme Court decided Bullard v. Blue Hills Bank, in which it held that an order denying confirmation of a Chapter 13 plan is generally not a final judgment, order, or decree.  135 S. Ct. 1686, 1691–94 (2015).[1]  Thus, it is now clear that § 158(a)(1) does not provide a basis for appellate jurisdiction in this case, and whether the appeal may proceed now turns on whether I decide to grant leave to appeal an interlocutory order.  Neither appellee contends that I should not grant such leave.  Moreover, the appeal involves a pure question of law, the resolution of which will likely determine whether the debtor is able to craft a viable plan.  Thus, I will grant leave to appeal the order denying confirmation of the debtor's plan.

---

[1] An order denying confirmation will be final if the underlying bankruptcy case is also dismissed.  Bullard, 135 S.Ct. at 1692.  The bankruptcy court did not dismiss the present case, and presumably the debtor will have an opportunity to file an amended plan.

3

**B. Merits**

Because the bankruptcy court's order was based on a pure question of law, my review is de novo. See, e.g., In re Pajian, 785 F.3d 1161, 1163 (7th Cir. 2015).

The statutory text at issue states that "the court shall confirm a plan if . . . with respect to each allowed secured claim provided for by the plan . . . if property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(I). The focus of the debtor's argument is on the word "payment." He argues that the literal meaning of "payment" does not include the monthly escrow deposits he proposes to make under his plan. This is so, the debtor argues, because a payment must discharge, in whole or in part, a debt or obligation, and the escrow deposits will not discharge any part of his debts to Talmer Bank or VFC at the time they are made. Rather, the deposited funds will sit in the account until such time as the debtor defaults on his plan or chooses to apply the funds to the balloon payments.

The debtor cites various sources in support of the proposition that a payment must discharge a debt or obligation, including legal encyclopedias and a decision by the Wisconsin Supreme Court in a tax case. See 60 Am. Jur. 2d Payment § 1 (2003); Smith v. Wis. Dep't of Taxation, 264 Wis. 389, 392 (1953). Dictionaries also contain definitions of "payment" and "pay" that reference the satisfaction of a debt or obligation. For example, one definition of "payment" in Black's Law Dictionary (10th ed. 2014) is "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation." And Merriam-Webster's Collegiate Dictionary (11th ed. 2003) contains a few definitions of "pay" that incorporate the element of satisfying a debt

4

or obligation, such as "to give in return for goods or service" and "to discharge indebtedness." However, these same dictionaries also indicate that "payment" has a meaning that does not depend on the satisfaction of a debt or obligation. Black's Law Dictionary states that a payment may be simply "[a] disbursement of money." Similarly, Merriam-Webster's states that a payment may be "a disposal or transfer of money." Under these latter definitions, the debtor's proposed escrow deposits would be payments, as they are disbursements or transfers of money. In any event, the proposed escrow deposits would satisfy a debt or obligation—the obligation imposed by the plan (were it confirmed) to make the monthly escrow deposits. Thus, the various definitions of "payment" do not establish that it is inconsistent with the text of § 1325 to treat monthly escrow deposits as payments.

Moreover, interpreting "payment" to exclude the debtor's proposed escrow deposits would lead to an absurd result—namely, that a plan would not comply with the equal-monthly-amounts requirement if it proposed monthly payments directly to the creditor along with a balloon payment, but it would comply with that requirement if it proposed the same arrangement except that the creditors are deprived of the use of the monthly payments until some future date. In other words, interpreting "payment" to exclude the debtor's escrow deposits would allow the debtor to avoid the equal-monthly-amounts requirement by making his creditors worse off. Had the debtor simply paid the monthly escrow amounts directly to the creditors, the creditors could have used the funds to generate additional income. Yet because the funds must sit in an escrow account until the debtor either defaults or makes the balloon payment, the creditors lose the time value of the funds. I can think of no reason why Congress would have wanted to allow the debtor to make the

Case 2:15-cv-00169-LA   Filed 06/26/15   Page 5 of 6   Document 12

escrow deposits but prohibit him from paying the same monthly amounts directly to the creditors. Accordingly, I conclude that the meaning of "payment" in § 1325(a)(5)(B)(iii)(I) is broad enough to encompass the debtor's proposed escrow deposits.

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the order of the bankruptcy court is **AFFIRMED**.

Dated at Milwaukee, Wisconsin this 26th day of June, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge